OPINION
{¶ 1} Appellant, Shane R. Elersic, appeals from the November 19, 2002 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for burglary.
 {¶ 2} Appellant was indicted on September 17, 1999, by the Lake County Grand Jury ("LCGJ"), in Case No. 99 CR 364, on three counts of breaking and entering, felonies of the fifth degree, in violation of R.C. 2911.13; three counts of theft, felonies of the fifth degree, in violation of R.C. 2913.02; one count of vandalism, a felony of the fifth degree, in violation of R.C.2909.05; one count of receiving stolen property, a felony of the fifth degree, in violation of R.C. 2913.51 with a firearm specification in violation of R.C. 2941.141; and one count of engaging in a pattern of corrupt activity, a felony of the second degree, in violation of R.C. 2923.32.[1] On September 24, 1999, appellant filed a waiver of the right to be present at his arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} A jury trial was held on February 1, 2000. On February 3, 2000, the jury found appellant guilty of two counts of breaking and entering, two counts of theft, engaging in a pattern of corrupt activity, and receiving stolen property with a firearm specification.
 {¶ 4} Appellant filed a timely notice of appeal with this court. In State v. Elersic (Nov. 21, 2001), 11th Dist. Nos. 2000-L-062 and 2000-L-164, 2001 Ohio App. LEXIS 5210, we reversed and remanded the judgment of the trial court. On remand, the trial court dismissed all counts except the receiving stolen property with a firearm specification and set the matter for a retrial to be held on July 8, 2002.
 {¶ 5} Prior to the retrial, on March 29, 2002, appellant was secretly indicted by the LCGJ on one count of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2) with a firearm specification in violation of R.C. 2941.141; and one count of grand theft, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1) with a firearm specification in violation of R.C. 2941.141. On April 12, 2002, appellant filed a waiver of the right to be present at his arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 6} Appellee, the state of Ohio, filed a motion for joinder on April 12, 2002, to join this case, Case No. 02 CR 159, with Case No. 99 CR 364. Appellant filed a brief in opposition to the state's motion on April 19, 2002. On May 21, 2002, the trial court denied the state's motion for joinder.
 {¶ 7} On July 8, 2002, appellant was retried solely on the charge of receiving stolen property. On July 9, 2002, the jury found him not guilty.
 {¶ 8} On August 6, 2002, appellant filed a motion to dismiss the March 29, 2002 indictment on the grounds of double jeopardy, res judicata, collateral estoppel, prosecutorial vindictiveness, and speedy trial. The state filed its response on August 20, 2002. According to its September 12, 2002 judgment entry, the trial court granted in part and denied in part appellant's motion to dismiss the indictment. The trial court dismissed count two, grand theft with a firearm specification, however, count one, burglary with a firearm specification, remained.
 {¶ 9} On October 2, 2002, appellant filed a motion to suppress identification evidence. After a hearing on October 8, 2002, appellant's motion was denied. On October 8, 2002, appellant filed a motion to suppress all evidence, which was denied. On October 10, 2002, appellant filed a motion in limine regarding evidence prohibited by the trial court's ruling on his motion to dismiss based on double jeopardy and regarding other acts evidence pursuant to Evid.R. 404(B), which was denied. Appellant filed a motion to dismiss based on a violation of his right to a speedy trial, which was also denied.
 {¶ 10} The instant matter proceeded to a jury trial, which commenced on October 10, 2002. At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion, which was again overruled by the trial court. On October 11, 2002, the jury returned a verdict of guilty on count one, burglary with a firearm specification.
 {¶ 11} The facts pertinent to this appeal are as follows: on April 25, 1999, Douglas Tenny's ("Tenny") residence, located at 5087 North Ridge Road in North Perry, Lake County, Ohio, was burglarized. Tenny, a truck driver, went to Galveston, Texas on the day at issue. According to Tenny, who testified for appellee, his parents watched his home and took care of his dog while he was away. Tenny stated that he received a call from his mother on his cell phone that his home was broken into and his dog had been attacked. Tenny returned home the following day.
 {¶ 12} Tenny and Detective Charles Ashman ("Detective Ashman"), with the Lake County Sheriff's Department ("LCSD"), both indicated that the door jam was broken, the locks were knocked out, and the interior rooms were ransacked. Tenny stated that some of the items taken from his home included approximately fourteen firearms that he used for hunting and target shooting, ammunition, a bow and arrow, a Bose stereo system, a computer, clothing, a backpack, and cash. The remote control necessary to operate the Bose stereo was not taken.
 {¶ 13} The LCSD notified numerous area electronics stores to be aware of any individuals who may be looking to sell, repair, and/or purchase parts for a Bose stereo system. Detective Ashman went to Mentor Television in Mentor, Ohio, to speak with service manager Paul Bene ("Bene") on May 20, 1999. According to Detective Ashman, Bene contacted him regarding an encounter he had with two men who inquired about purchasing a remote control for a Bose stereo system.
 {¶ 14} Bene, who testified for appellee, said that one of the men was appellant. Bene stated that he told appellant that he would need a serial number to order a Bose remote, which appellant provided. Bene gave that serial number to the LCSD, which matched the number on the Bose system stolen from Tenny's residence. Bene gave a description of the two males to the LCSD. Bene later viewed a photo array and immediately pointed out appellant as one of the two men. Bene indicated that he was one hundred percent certain in his identification of appellant.
 {¶ 15} Michael Fazzolare ("Fazzolare") testified for the state that around June 27 or 28, 1999, appellant picked him up to go to St. Denis Golf Course ("St. Denis") in Geauga County. According to Fazzolare, appellant drove his girlfriend's, Gina Topazio's, vehicle. Fazzolare stated that when appellant picked him up, there were two backpacks in the car, one of which was taken from Tenny's residence. After leaving St. Denis, the vehicle became disabled and Fazzolare said that he and appellant left it near the Route 615 and Route 84 intersection. The LCSD later towed the car and discovered that one of the backpacks matched the one taken from Tenny's house.
 {¶ 16} Pursuant to an investigation involving a series of break-ins at local businesses in which Fazzolare was a suspect, the LCSD conducted a search of Fazzolare's home and found the Bose stereo at issue here. Fazzolare indicated that appellant told him that he and Josh Miller ("Miller") broke into Tenny's house and stole various items, including the Bose stereo. Fazzolare said that he first saw all of the stolen items at appellant's father's home, which included guns, a crossbow, a computer, and the Bose stereo. Fazzolare stated that he bought the Bose stereo from appellant. Fazzolare further testified that because the Bose stereo did not fully work without the remote control, he went with appellant to Mentor Television to try to purchase one.
 {¶ 17} Emily Matty ("Matty"), who was married to Fazzolare at the time of the trial, testified for appellee. According to Matty, appellant told her that he broke into Tenny's residence. Matty stated that appellant specifically indicated that he took a stereo system from Tenny's home and sold it to Fazzolare.
 {¶ 18} Detective Kevin Coleman ("Detective Coleman"), with the LCSD, testified for appellee that he discovered the Bose stereo system in Fazzolare's residence. Detective Coleman stated that Fazzolare told him that appellant and Miller committed the burglary of Tenny's home and that appellant took the stereo. Defense counsel also called Detective Coleman as its witness. Detective Coleman testified for the defense that an investigation was conducted in order to locate Miller, however, no statement was ever taken from Miller nor was he ever charged with the Tenny burglary.
 {¶ 19} Pursuant to its November 19, 2002 judgment entry, the trial court sentenced appellant to four years in prison with thirty-five days credit for time served. Appellant was also required to serve an additional term of one year for the firearm specification, which was to be served prior to and consecutive to the foregoing prison term pursuant to R.C. 2929.14(D)(1). In addition, appellant was ordered to pay restitution in the amount of $14,190. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 20} "[1.] Appellant's constitutional right to a speedy trial was violated when an indictment issued new criminal charges arising from same facts as original charge which was prosecuted almost three years earlier.
 {¶ 21} "[2.] Appellant's constitutional right not to be put twice in jeopardy for the same offense was violated when ultimate issues of fact were retried after being decided in prior trial resulting in acquittal.
 {¶ 22} "[3.] Appellant's right to compulsory process and due process were violated when the trial court excluded an essential defense witnesses.
 {¶ 23} "[4.] Appellant's due process rights were violated when prosecutor unjustifiably indicted appellant on a more serious charge after lawfully attacking his conviction thereby presumptively showing a retaliatory motive toward accused.
 {¶ 24} "[5.] The evidence adduced at trial was insufficient to sustain a conviction as a matter of law.
 {¶ 25} "[6.] Appellant's burglary conviction and firearm specification are against the manifest weight of the evidence.
 {¶ 26} "[7.] Trial court abused its discretion by allowing other acts evidence to be admitted as to the break in at [St. Denis] and alleged threats made to witnesses.
 {¶ 27} "[8.] Appellant was denied the effective assistance of counsel warranting the reversal of this case.
 {¶ 28} "[9.] The procedure employed involving the photographic display shown to the witness was so impermissibly suggestive and constitutes a denial of due process.
 {¶ 29} "[10.] The trial court abused its discretion by permitting the testimony concerning an alleged accomplice [Miller] without [appellee] providing appellant with any prior discovery or notice of intention to offer such evidence.
 {¶ 30} "[11.] The trial court abused its discretion by permitting the introduction of statements allegedly made by appellant without those statements ever being provided to defense counsel through discovery."
 {¶ 31} In his first assignment of error, appellant argues that his constitutional right to a speedy trial was violated when an indictment issued new criminal charges arising from the same facts as in the original charge which was prosecuted almost three years earlier.
 {¶ 32} "The Sixth Amendment right to a speedy trial * * * is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." UnitedStates v. MacDonald (1982), 456 U.S. 1, 8.
 {¶ 33} R.C. 2945.71(C)(2) provides that: "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest."
 {¶ 34} With respect to a pre-indictment delay, the Supreme Court of Ohio stated: "`[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution.'" State v. Gotham
(Dec. 31, 1997), 11th Dist. No. 96-T-5485, 1997 Ohio App. LEXIS 6034, at 12-13, quoting State v. Luck (1984),15 Ohio St.3d 150, paragraph two of the syllabus.
 {¶ 35} On September 17, 1999, appellant was indicted in Case No. 99 CR 364 for breaking and entering, theft, vandalism, receiving stolen property with a firearm specification, and engaging in a pattern of corrupt activity. The indictment arose from appellant's criminal involvement at three businesses in May and June of 1999, and in selling a stolen firearm on June 23, 1999. We must note again that after a jury trial, appellant was found guilty of the foregoing charges, with the exception of vandalism. On appeal, we reversed and remanded the judgment of the trial court. On remand, the trial court dismissed all counts except the receiving stolen property with a firearm specification, which the jury found him not guilty after a retrial.
 {¶ 36} Prior to the retrial, appellant was indicted on March 29, 2002, in Case No. 02 CR 159, for burglary and grand theft with firearm specifications, which arose from his criminal involvement at Tenny's residence on April 25, 1999. Thus, prior to the March 29, 2002 indictment, appellant had never been previously indicted for burglary and grand theft with firearm specifications. With respect to the receiving stolen property charge in Case No. 99 CR 364, the record shows that appellant sold stolen property (a gun) to a third party on June 23, 1999. In this case, the grand theft charge, which was dismissed, and the burglary charge with a firearm specification, arose from appellant breaking into Tenny's home on April 25, 1999, and stealing various items, including the gun at issue that appellant later sold. Even though the same gun was involved in the stolen property count with a firearm specification and some of the same witnesses were involved in both cases, the charges clearly stemmed from separate acts.
 {¶ 37} Pursuant to Gotham and Luck, supra, appellant has failed to show actual prejudice regarding the alleged pre-indictment delay. Also, the March 29, 2002 indictment was brought well within the six year statute of limitations for felonies under R.C. 2901.13(A)(1)(a). Appellant's constitutional right to a speedy trial was not violated, since he was brought to trial on October 10, 2002, which was within the two hundred seventy day requirement of R.C. 2945.71(C)(2). Therefore, appellant's first assignment of error is without merit.
 {¶ 38} In his second assignment of error, appellant contends that his constitutional right not to be put twice in jeopardy for the same offense was violated when ultimate issues of fact were retried after being decided in a prior trial resulting in an acquittal. Appellant also alleges that this case should have been dismissed under the doctrine of collateral estoppel.
 {¶ 39} This court stated in State v. Hathy (Apr. 20, 2001), 11th Dist. No. 2000-A-0003, 2001 Ohio App. LEXIS 1833, at 4-5, that:
 {¶ 40} "[t]he Fifth Amendment to the United States Constitution provides that no person shall `be subject for the same offense to be twice put in jeopardy of life or limb(.)' TheFifth Amendment protection against double jeopardy has been applied to the states through the operation of theFourteenth Amendment. State v. Lovejoy (1997), 79 Ohio St.3d 440, 443
* * *; State v. Hayes (Sept. 30, 1999), [11th Dist. No. 97-A-0667, 1999 Ohio App. LEXIS 4645, at 18]. Similarly, Section10, Article I of the Ohio Constitution provides that `no person shall be twice put in jeopardy for the same offense.'
 {¶ 41} The Supreme Court has long recognized that `the Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' State v. Gustafson
(1996), 76 Ohio St.3d 425, 432 * * *." (Parallel citations omitted.)
 {¶ 42} "`Collateral estoppel means "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * *"'" State v. Sanders (Dec. 15, 1995), 11th Dist. No. 94-P-0132, 1995 Ohio App. LEXIS 5569, at 16, fn.2, quoting Ashe v. Swenson (1970), 397 U.S. 436, 443. "Collateral estoppel is an established rule of the federal criminal law and is embodied in the Fifth Amendment guarantee against double jeopardy." Id., citing State v. Tanner (1993),90 Ohio App.3d 761, 766-767.
 {¶ 43} In the case sub judice, as previously addressed in appellant's first assignment of error, the record reflects that the acts committed in Case Nos. 99 CR 364 and 02 CR 159 are distinct since each constitutes a separate event and different elements. Because appellant's two acts were committed separately resulting in two separate offenses, double jeopardy protection does not apply. State v. Blakenship (1988), 38 Ohio St.3d 116,117; State v. Troutman (July 6, 1994), 9th Dist. Nos. 93CA005686, 93CA005687, 93CA005688, 1994 Ohio App. LEXIS 2999, at 21. Furthermore, appellant has failed to demonstrate that the issue of whether or not he committed the burglary and grand theft offenses in Case No. 02 CR 159 was decided in the first proceeding, Case No. 99 CR 364. Dowling v. United States
(1990), 493 U.S. 342, 350-351. Thus, appellant's second assignment of error is without merit.
 {¶ 44} In his third assignment of error, appellant alleges that his right to compulsory process and due process were violated when the trial court prevented him from calling Miller and Deputy Harpster to the witness stand
 {¶ 45} In State v. Wooten (Nov. 30, 1990), 11th Dist. No. 88-L-13-233, 1990 Ohio App. LEXIS 5233, at 9, we stated that: "[t]he right to compulsory process is still considered a fundamental element of the defendant's basis right to due process. Webb v. Texas (1972), 409 U.S. 95. Essentially, the right to compel the attendance of a witness enables the defendant to present a defense. Washington v. Texas (1967), 388 U.S. 14."
 {¶ 46} It is within the sound discretion of the trial court to impose sanctions that it deems just for discovery violations.State v. Montes (1993), 92 Ohio App.3d 539, 548, citing Statev. Wiles (1991), 59 Ohio St.3d 71. The court in Montes at 548-549 stated that: "* * * the holding in Lakewood v.Papadelis (1987), 32 Ohio St.3d 1 * * *, paragraph two of the syllabus, that `[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery,' should not be construed to mean that the exclusion of testimony or evidence is never a permissible sanction in a criminal case. It is only when the exclusion acts to completely deny the defendant his or her constitutional right to present a defense that the sanction is impermissible. State v. Harcourt
(1988), 46 Ohio App.3d 52 * * *." (Parallel citations omitted.)
 {¶ 47} In the instant matter, appellant sought to call Miller as a witness, and appellee objected because appellant had not notified appellee that Miller was a potential witness. In fact, no witness list was provided by appellant. After the trial court inquired whether appellant's counsel gave the prosecution notice, appellant's counsel replied that he told the prosecution this morning (i.e. the morning of the trial), because he claimed that he was unaware that Miller was going to be accused as being the codefendant in the burglary. Appellee disagreed and stressed that Miller's name was all over the report, especially in Fazzolare's statement, that he was involved with appellant, which was provided to appellant approximately four months before trial.
 {¶ 48} The trial court ruled that Miller would not be able to testify and stated that:
 {¶ 49} "* * * whether or not [Miller] committed this offense is not an issue in this case. The jury is called upon to decide whether or not [appellant] committed the offense. * * * [Y]ou've got to give [appellee] notice and I think it's too late to tell [appellee] this morning that you're going to have [Miller] testify. The prosecutor just like the defense has got a right to have an opportunity to prepare their case. If you would have told [appellee] yesterday * * * then I would look at it much differently but not this morning." We disagree.
 {¶ 50} The trial court erred in not permitting Miller to testify. However, this error was harmless. None of appellant's substantial rights were affected nor was he prejudiced in any manner. The exclusion of Miller's testimony did not completely deny appellant the opportunity to present a defense.
 {¶ 51} With respect to Deputy Harpster, appellant attempted to call him as a witness. However, the record shows that Deputy Harpster was not properly served with a subpoena. We must stress that appellant's counsel never asked for a continuance nor sought to enlist the LCSD to secure Deputy Harpster. Furthermore, appellant was not prejudiced since Deputy Harpster's potential testimony regarding appellant's traffic citation and the impoundment of his vehicle on April 25, 1999, was admitted in the form of exhibits. Appellant's third assignment of error is without merit.
 {¶ 52} In his fourth assignment of error, appellant indicates that his due process rights were violated when the prosecutor unjustifiably indicted him on a more serious charge after lawfully attacking his conviction thereby presumptively showing a retaliatory motive toward him. Appellant contends that the current indictment arose from the same facts as the receiving stolen property with a firearm specification charge in the prior case.
 {¶ 53} "To establish that the government's actions amounted to vindictive prosecution, defendant must demonstrate either actual vindictiveness, which requires `direct evidence of an expressed hostility or threat to him for having exercised a constitutional right.'" State v. Tankers (Apr. 23, 1998), 8th Dist. Nos. 72398 and 72399, 1998 Ohio App. LEXIS 1724, at 13, citing U.S. v. Scholz (C.A.9, 1996), 91 F.3d 157. A prosecutor is not required to seek an indictment on the least severe charges. Tankers at 13. A prosecutor is free to seek more severe charges without violating due process. Id. at 14.
 {¶ 54} As previously addressed, the receiving stolen property charge in Case No. 99 CR 364 was based upon appellant's conduct in selling a stolen firearm on June 23, 1999. The burglary charge in this case arose from the break in and theft at Tenny's residence on April 25, 1999. Again, we are dealing with two separate events. Thus, appellant was not re-indicted on more serious charges based upon the same conduct as alleged in the original indictment. Pursuant to Tankers and Scholz, supra, appellant has failed to demonstrate either actual vindictiveness or a threat to him for having exercised a constitutional right. Therefore, appellant's fourth assignment of error is without merit.
 {¶ 55} In his fifth assignment of error, appellant alleges that the evidence was insufficient to sustain a conviction. Appellant contends that there was no evidence as to the type of guns stolen or their operability. Also, appellant stresses that there was not sufficient evidence to show that someone was present or likely to be present.
 {¶ 56} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 57} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 58} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *'"
 {¶ 59} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 60} "* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 61} R.C. 2911.12(A)(2) governs the crime of burglary and states that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 62} R.C. 2941.141(D) provides that a "`firearm' has the same meaning as in section 2923.11 of the Revised Code."
 {¶ 63} R.C. 2923.11(B) states that:
 {¶ 64} "(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 65} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 66} In the case at bar, Tenny, a hunter, testified that approximately fourteen firearms that he used for hunting and target shooting as well as ammunition were taken from his residence on the day of the burglary. Detective Ashman corroborated Tenny's testimony. In this sense, any rational trier of fact could have found that the firearms were operable. SeeState v. Murphy (1990), 49 Ohio St.3d 206, syllabus; R.C.2923.11(B)(2).
 {¶ 67} Also, Tenny stated that he was a truck driver and was in Texas when the burglary occurred. However, Tenny further indicated that his parents watched his home and his dog, and were routinely in and out when he was out of town. As such, pursuant to R.C. 2911.12(A)(2), Tenny's parents were likely to be present when the burglary was committed. In addition, although Tenny has an irregular schedule and was away, it is not unreasonable or unlikely for him to return home early for any number of reasons, including an emergency. See, e.g., State v. Graves (May 1, 2001), 7th Dist. No. 99-CA-113, 2001 Ohio App. LEXIS 2115, at 7. Therefore, based on Schlee, supra, there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the offense have been proven. Thus, appellant's fifth assignment of error is without merit.
 {¶ 68} In his sixth assignment of error, appellant argues that his conviction is against the manifest weight of the evidence.
 {¶ 69} As this court stated in Schlee, supra, at 14-15:
 {¶ 70} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 71} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.)" (Emphasis sic.)
 {¶ 72} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 73} In this case, appellant argues that there were at least five people suspected of committing this crime. Appellant also alleges that Fazzolare and Matty were not credible witnesses and that their testimony should be discounted. We disagree.
 {¶ 74} Although initially there were several potential suspects, there was no concrete evidence to link them to this crime. However, credible evidence developed which established that appellant was involved in the burglary of Tenny's home. Both Tenny and Detective Ashman indicated that the door jam to Tenny's residence was broken, the locks were knocked out, and the interior rooms were ransacked. Tenny testified that one of the items stolen was a Bose stereo system, however, the remote control necessary to operate the stereo was not taken. Bene, service manager of Mentor Television, stated that appellant came into the store and inquired about purchasing a remote control for a Bose stereo system. According to Bene, appellant provided a serial number which matched the number on the Bose system stolen from Tenny's residence. Bene later viewed a photo array, immediately pointed out appellant, and indicated that he was one hundred percent certain in his identification.
 {¶ 75} Fazzolare testified that around June 27 or 28, 1999, appellant picked him up in his girlfriend's vehicle. Fazzolare stated that there were two backpacks in the car, one of which was taken from Tenny's residence. The LCSD later discovered that one of the backpacks matched the one taken from Tenny's home. Also, the LCSD found the Bose stereo at Fazzolare's home. According to Fazzolare and Matty, Fazzolare purchased the Bose stereo from appellant. Fazzolare and Matty indicated that appellant told them that he and Miller broke into Tenny's house and stole various items, including the Bose stereo, and Detective Coleman corroborated that information. Fazzolare said that he went with appellant to Mentor Television to try to purchase a remote control for the Bose stereo. Based on the overwhelming credible evidence presented, and pursuant to Schlee and Thompkins,
supra, the jury did not clearly lose its way in convicting appellant of burglary. Thus, appellant's sixth assignment of error is without merit.
 {¶ 76} In his seventh assignment of error, appellant argues that the trial court abused its discretion by allowing other acts evidence to be admitted regarding the break in at St. Denis and alleged threats made to witnesses.
 {¶ 77} State v. Montgomery (1990), 61 Ohio St.3d 410, 413, states: "[t]he term `abuse of discretion' `(* * *) connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (* * *)'State v. Adams (1980), 62 Ohio St.2d 151, 157 * * *." (Parallel citations omitted.)
 {¶ 78} Evid.R. 404(B) provides that: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 79} In this case, Fazzolare's testimony at trial did not reveal any implications that he and appellant committed a crime at St. Denis. Rather, Fazzolare merely stated that appellant picked him up in his girlfriend's vehicle to go to St. Denis and that he noticed two backpacks in the car. Fazzolare indicated that after he and appellant left St. Denis, the vehicle became disabled and they left it at an intersection. The LCSD later towed the car and discovered that one of the backpacks matched the one taken from Tenny's home. Thus, Fazzolare's testimony did not violate Evid.R. 404(B).
 {¶ 80} In addition, testimony regarding threats that appellant allegedly made to Matty and Fazzolare were properly admitted. We must note that the alleged threats were never brought up by appellee on direct examination. Rather, on cross-examination, appellant's counsel asked Matty why she agreed to have her picture taken with appellant if her relationship with him was not very good at the time. Matty answered appellant's counsel's question by stating that appellant had made threats to her. On redirect examination, the issue of the threats was briefly mentioned. Appellant's counsel did not object.
 {¶ 81} Also, on cross-examination of Fazzolare, appellant's counsel introduced an affidavit drawn up by appellant's former attorney, which Fazzolare signed. Appellant's counsel questioned Fazzolare regarding the affidavit in which he admitted to lying about appellant's involvement in the prior case, Case No. 99 CR 364. Fazzolare testified that he signed the affidavit because he was threatened by appellant. As such, the testimony of the threats made by appellant was not offered to show his character or that he acted in conformity with it, but rather to allow Fazzolare the opportunity to explain why he would make a false affidavit. Therefore, based on Montgomery and Adams, supra, the trial court did not abuse its discretion. Appellant's seventh assignment of error is without merit.
 {¶ 82} In his eighth assignment of error appellant argues that he was denied the effective assistance of counsel. Appellant stresses that his counsel was unprepared. Also, appellant contends that he was prejudiced because his counsel failed to file a witness list, which resulted in the exclusion of the testimony of Miller, the alleged accomplice.
 {¶ 83} Strickland v. Washington (1984), 466 U.S. 668, 687
states:
 {¶ 84} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 85} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at paragraph two of the syllabus. State v.Bradley (1989), 42 Ohio St.3d 136, 142, quoting Strickland,
supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 86} In the instant matter, although appellant's counsel moved for a continuance two days before trial, there is no evidence in the record that he failed to review the transcripts from appellant's prior trial or that he was unprepared to try this case. Also, appellant's counsel's failure to include Miller on his potential witness list does not give rise to an acquittal for appellant. State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 36-37. There is no certainty that Miller would have even testified. Even assuming arguendo that appellant's counsel was deficient, based onStrickland, supra, appellant failed to show that counsel's deficient performance prejudiced the defense. Thus, there has been no showing of the reasonable probability that had appellant's counsel done things in another manner, the outcome would have been different. Therefore, appellant's eighth assignment of error is without merit.
 {¶ 87} In his ninth assignment of error, appellant alleges that the procedure employed involving the photographic display shown to the witness was so impermissibly suggestive and constitutes a denial of due process.
 {¶ 88} This court stated in State v. Perry, 11th Dist. No. 2002-T-0035, 2003-Ohio-7204, at ¶ 14-17:
 {¶ 89} "[i]n Neil v. Biggers (1972), 409 U.S. 188 * * *, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. First, the court must determine whether the identification procedure was unduly suggestive. If the procedure was overly suggestive, then the court must proceed to the second step in which it ascertains whether there was a substantial likelihood of misidentification.Biggers at 197-199. As a result, before identification testimony will be suppressed, the court must find that the procedure employed by the police was so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.
 {¶ 90} "The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in Biggers. State v. Green
(1996), 117 Ohio App.3d 644, 652-653 * * *; State v. McDade
(Sept. 25, 1998), 11th Dist. No. 97-L-059, 1998 Ohio App. LEXIS 4533 * * *, at 4. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. Green at 653; McDade * * * at 4. However, if the defendant satisfies his initial burden of proof, the burden of persuasion falls upon the state to show that the evidence is valid. State v. Kuzma
(Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 Ohio App. LEXIS 5768, at *5, quoting State v. Hensley (1992),75 Ohio App.3d 822, 828-829 * * *.
 {¶ 91} "Even if the identification procedure contains notable flaws, this alone does not necessarily preclude the admissibility of the subsequent in-court identification. State v. Moody
(1978), 55 Ohio St.2d 64, 67 * * *, citing State v. Barker
(1978), 53 Ohio St.2d 135, 142-143 * * *. In order to suppress identification testimony, there must be `"a very substantial likelihood of irreparable misidentification."' State v. Jells
(1990), 53 Ohio St.3d 22, 27 * * *, quoting Simmons v.United States (1968), 390 U.S. 377, 384 * * *.
 {¶ 92} "Moreover, an unnecessarily suggestive identification procedure does not run afoul of the Due Process Clause if the identification is otherwise imbued with sufficient indicia of reliability. The critical issue is whether the identification is reliable under the totality of the circumstances, notwithstanding the suggestiveness of the confrontation procedure. Biggers at 199 * * *. Therefore, even if the procedure was suggestive, the challenged identification is still admissible so long as it is reliable. Moody at 67. * * *" (Parallel citations omitted.)
 {¶ 93} Here, appellant stresses that including only one person with reddish blonde hair was impermissibly suggestive. We disagree. According to Bene, of the six photos that he viewed, one of the individuals had reddish blond hair and two had blondish hair. We must note that Bene further testified that hair color was not the basis of his identification of appellant.
 {¶ 94} Even assuming that the photo array was unduly suggestive, pursuant to Biggers, supra, Bene's identification of appellant was highly reliable. Again, Bene had the opportunity to speak face to face with appellant regarding the Bose remote control at Mentor Television. Bene paid great attention to appellant since he was previously notified by the LCSD to be on the lookout for an individual inquiring about a Bose remote control. Bene's description of appellant was accurate and he even testified that he was one hundred percent certain of his identification. Appellant's ninth assignment of error is without merit.
 {¶ 95} Because appellant's tenth and eleventh assignments of error are interrelated, they will be addressed in a consolidated fashion. In his tenth assignment of error, appellant contends that the trial court abused its discretion by permitting the testimony concerning an alleged accomplice, Miller, without appellee providing him with any prior discovery or notice of intention to offer such evidence. In his eleventh assignment of error, appellant stresses that the trial court abused its discretion by permitting the introduction of statements allegedly made by him without those statements ever being provided to defense counsel through discovery.
 {¶ 96} Crim.R. 16 provides that:
 {¶ 97} "(B) Disclosure of evidence by the prosecuting attorney
 {¶ 98} "(1) Information subject to disclosure. (a) Statement of defendant or codefendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 99} "(i) Relevant written or recorded statements made by the defendant or codefendant, or copies thereof;
 {¶ 100} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 {¶ 101} "(iii) Recorded testimony of the defendant or co-defendant before a grand jury.
 {¶ 102} "* * *
 {¶ 103} "(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *" (Emphasis sic.)
 {¶ 104} In this case, appellant's claim of "sincere surprise" at learning that Miller was an accomplice is not well-founded. As previously addressed, this information was provided to appellant approximately four months before trial. Also, Fazzolare's statements that appellant admitted to committing this offense were provided to appellant's counsel in discovery pursuant to the police report. Thus, there were no Crim.R. 16(B) violations since appellee disclosed the foregoing information prior to trial. Therefore, appellant's tenth and eleventh assignments of error are without merit.
 {¶ 105} For the foregoing reasons, appellant's assignments of error are not welltaken. The judgment of the Lake County Court of Common Pleas is affirmed.
Rice, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Of the nine counts, the receiving stolen property count with a firearm specification involved property taken in the burglary in this case.